**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-31174
_____

SARITA HOLMES JOURDAIN; MICHAEL JOURDAIN,

Plaintiffs,

VERSUS

RIVERSIDE MOBILE HOME PARK, INC.; DAVID W. MILLET, SR.,

Defendants - Cross Plaintiffs - Appellants,

VERSUS

AMERICAN GLOBAL INSURANCE,

Defendant - Cross Defendant - Appellee.
_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(97-CV-416-J)
_____

November 13, 1998

Before REAVLEY, DAVIS and DUHÉ, Circuit Judges.

PER CURIAM:[*]

Defendants Riverside Mobile Home Park, Inc. and David W. Millet, Sr. appeal the district court's grant of summary judgment in favor of American Global Insurance. They contend that the district court erred in concluding that American Global Insurance had no duty to defend under its insurance policy issued to appellants. They also appeal the district court's denial of their

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

motion for summary judgment.  We affirm.

I.

Plaintiffs Sarita Jourdain and Michael Jourdain purchased a trailer home in January of 1997.  The trailer was located in Riverside Mobile Home Park in Reserve, Louisiana.  The park was owned by Riverside Mobile Home Park, Inc. ("Riverside") and was operated by David Millet, Sr., the owner of Riverside.

After purchasing the trailer, the Jourdains, an African American couple, allege that Millet refused to lease to them the lot on which their trailer was located because of their race.  They further allege that Millet shut off their water supply by locking the water line control and that he refused to return their phone calls.

Plaintiffs filed suit against Riverside and Millet, alleging violations of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.  Plaintiffs also joined Riverside and Millet's general liability insurer American Global Insurance ("AGI").  AGI filed a motion for summary judgment, asserting that it had no duty to defend or to indemnify Riverside and Millet because plaintiffs' allegations of intentional discrimination were not covered under the policy, which contained an intentional acts exclusion.  Riverside and Millet filed a cross motion for summary judgment.

Relying upon Vaughner v. Pulito, 804 F.2d 873 (5th Cir. 1986), the district court held that plaintiffs had alleged causes of action that could only be predicated upon intentional

2

discriminatory acts by Riverside and Millet.  Because the insurance policy issued by AGI had an intentional acts exclusion, the court concluded that AGI had no duty to defend and granted AGI's motion for summary judgment.  The district court also denied Riverside and Millet's motion for summary judgment.  Riverside and Millet perfected their appeal to this Court.

## II.

We review a district court's grant of summary judgment under a *de novo* standard of review.  Melton v. Teachers Ins. & Ass'n of America, 114 F.3d 557, 559 (5th Cir. 1997).  Summary judgment is proper where the pleadings and summary judgment evidence, viewed in the light most favorable to the nonmovant, present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Id.; Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hibernia Nat'l. Bank v. Carner, 997 F.2d 94 (5th Cir. 1993).  Applying these principles, we turn to the question of whether the district court properly granted AGI's motion for summary judgment.

Under Louisiana law, in order to determine whether an insurer has a duty to defend its insured under the policy, the court must compare the terms of the insurance policy with the allegations in the plaintiff's complaint.  Vaughner, 804 F.2d at 876 (citing Audubon Coin & Stamp Co. v. Alford Safe & Lock Co., 230 So.2d 278, 279 (La. App. 1st Cir. 1969)).  Only if the allegations in the plaintiff's complaint "unambiguously and absolutely exclude coverage" is the insurer relieved of the duty to defend the

3

insured. <u>Vaughner</u>, 804 F.2d at 877; <u>Michel v. Ryan</u>, 373 So.2d 985, 988 (La. App. 3d Cir. 1979). If the petition alleges facts that, if proven, would trigger coverage under the policy, the insurer is obligated to defend. <u>Vaughner</u>, 804 F.2d at 877; <u>West Brothers of DeRidder v. Morgan Roofing</u>, 376 So.2d 345,348 (La. App. 3d Cir. 1979).

The insurance policy at issue provides that coverage is excluded for "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Both Riverside and Millet are "insureds" under the policy.[2] Therefore, policy coverage is activated only if appellants' liability is based on an unintentional act. <u>Vaughner</u>, 804 F.2d at 877. We must compare the language of the policy to the allegations made in plaintiffs' complaint to determine whether the allegations unambiguously and absolutely exclude coverage, relieving AGI of its duty to defend.

Plaintiffs assert two causes of action in their complaint. They allege violations of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act, 42 U.S.C. § 3601. Under the Civil Rights Act, it is necessary to show intentional racial

---

[2]The policy provides:
  1. If you are designated in the Declarations as...
     c.  An organization other than a partnership or joint venture, you are an  insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  2. Each of the following is also an insured:
     a.  Your "employees," other than your "executive officers," but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

4

discrimination.  Hanson v. Veterans Admin., 800 F.2d 1381 (5th Cir. 1986)(citing Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 567, n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984); Save Our Cemetaries, Inc. v. Archdiocese of New Orleans, Inc., 568 F.2d 1074, 1078 (5th Cir. 1978), *cert. denied*, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978)).  However, under the Fair Housing Act, a violation may be established not only by discriminatory intent, but also by a showing of "significant discriminatory effect."  Hanson, 800 F.2d at 1386 (citing Woods-Drake v. Lundy, 667 F.2d 1198, 1202 (5th Cir. 1982); United States v. Mitchell, 580 F.2d 789, 791-92 (5th Cir. 1978)).  Thus, plaintiffs may state a cause of action under the Fair Housing Act either by alleging instances of intentional discrimination or instances of unintentional actions that have a significant discriminatory effect.  If plaintiffs have alleged unintentional actions by Riverside and Millet, then AGI would have a duty to defend because these unintentional actions, unlike intentional actions, would fall within the coverage provided by the policy.

However, a careful reading of plaintiffs' complaint reveals that plaintiffs have alleged only intentional acts of discrimination.  Plaintiffs allege that Millet refused to lease to them the lot on which their trailer was located because of their race, that he shut off their water supply, and that he refused to return their phone calls.  Several times in the complaint, plaintiffs use the language "intentionally and maliciously" in describing Millet's actions.  These allegations can only establish intentional racial discrimination by Riverside and Millet.

5

Appellants argue that plaintiffs have alleged unintentional acts that have a discriminatory effect.  Specifically, they point to the sentence in plaintiffs' complaint that "Defendant has continuously followed a pattern and practice of discriminating against African Americans...when such persons inquire about renting trailer space."  However, we read this phrase in the petition as complaining that appellants intentionally discriminated against African Americans repeatedly. It is not being used to show that appellants participated in an unintentional pattern or practice that had a discriminatory effect on African Americans.

III.

Because the allegations in plaintiffs' complaint allege only intentional acts of discrimination, the district court correctly concluded that AGI had no potential coverage under the policy. Consequently, AGI had no duty to defend.  The judgment of the district court is therefore affirmed.

Affirmed.